In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-3675

DEBORAH ORLANDO COONEY,

*Plaintiff-Appellant*,

*v.*

LYLE ROSSITER, JR., *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 2747—**Marvin E. Aspen**, *Judge*.

SUBMITTED AUGUST 27, 2009—DECIDED SEPTEMBER 30, 2009

Before BAUER, POSNER, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*.   Deborah Cooney lost custody
of her two sons after an Illinois state court found that
she suffered from "Munchausen syndrome by proxy," in
which "an individual produces or feigns physical or
emotional symptoms in another person under his or her
care. Usually the victim is a young child, and the person
producing the symptoms may be the child's parent or
caretaker, most often the mother." American Medical

Association, *Complete Medical Encyclopedia* 870 (Jerrold B. Leikin & Martin S. Lipsky eds. 2003); see also Thomas Lathrop Stedman, *Stedman's Medical Dictionary* 1906 (28th ed. 2006). She sued the state court judge (Judge Nordquist), and others as we'll see, in federal district court, charging constitutional violations. The district court dismissed the suit. Judge Nordquist is of course absolutely immune from suit, since he was acting in his judicial capacity in ruling that Cooney was not entitled to custody.

Cooney's complaint tells the following story. In 1998 she divorced her husband and was awarded custody of the couple's two sons. Later the ex-husband—through his attorney, defendant Cain—filed a petition to transfer custody to himself. Judge Nordquist, the judge presiding over the custody proceeding, appointed defendant Bischoff as the children's representative. Under Illinois law, in proceedings involving a minor, the court can appoint a lawyer (1) to represent the child as an attorney would represent an adult, (2) to be the child's representative, or (3) to be the child's guardian ad litem. 750 ILCS 5/506(a). The powers and duties of a child's representative are very similar to those of a guardian ad litem. Compare *id.*, § 5/506(a)(2) with *id.*, § 5/506(a)(3). The principal differences are that unlike a guardian ad litem a child's representative "shall consider, but not be bound by, the expressed wishes of the child" and "shall not render an opinion, recommendation, or report to the court and shall not be called as a witness" but instead "shall offer evidence-based legal arguments." *Id.*; see *In re Marriage of Bates*, 819 N.E.2d 714, 726 (Ill. 2004).

In other words, the child's representative is a hybrid of a child's attorney, 750 ILCS 5/506(a)(1), and a child's guardian ad litem. Carl W. Gilmore, *Understanding the Illinois Child's Representative Statute*, 89 Ill. B.J. 458, 460 (Sept. 2001); see *In re Marriage of Kostusik*, 836 N.E.2d 147, 158 (Ill. App. 2005). The more mature the child, the likelier the court is to appoint an attorney to represent the child; the less mature, the likelier that a guardian ad litem will be appointed; and for children of intermediate maturity, there is the child's representative. Cf. Gilmore, *supra*, at 461.

Cooney's complaint alleges that Bischoff "orchestrated" a court order appointing defendant Rossiter as the children's psychiatrist and began a "witch hunt" against Cooney by telling Rossiter that "this may be a situation of Munchausen syndrome (on the part of the Mother)." Eight months later Rossiter completed his report, concluding that Cooney was indeed exhibiting signs of Munchausen syndrome by proxy. He noted a number of occasions over a period of ten years on which Cooney had attempted to have doctors diagnose her older son with severe illnesses or injuries. According to the complaint, attorney Cain received a copy of Rossiter's report (from Rossiter, Bischoff, or the judge), but Cooney did not. Cain petitioned for an emergency order of protection that quoted directly from Rossiter's draft report. Judge Nordquist granted the petition, stating that Cooney was "armed and suicidal," and temporarily transferred custody of the children to her ex-husband, their father. "[T]hereafter, numerous other conspiratorial acts and violations" of Cooney's constitutional rights occurred,

among them that defendant Klaung, the children's thera-pist, "made false statements" to the Department of Chil-dren and Family Services that led to a finding of child abuse by Cooney.

Rossiter and Bischoff are entitled to absolute immunity. Guardians ad litem and court-appointed experts, including psychiatrists, are absolutely immune from liability for damages when they act at the court's direction. E.g., *Jones v. Brennan*, 465 F.3d 304, 308 (7th Cir. 2006) (Illinois law); *Scheib v. Grant*, 22 F.3d 149, 157 (7th Cir. 1994) (same); *Hughes v. Long*, 242 F.3d 121, 127-28 (3d Cir. 2001); *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984). They are arms of the court, much like special masters, and deserve protection from harassment by disappointed litigants, just as judges do. Experts asked by the court to advise on what disposition will serve the best interests of a child in a custody proceeding need absolute immunity in order to be able to fulfill their obligations "without the worry of intimidation and harassment from dissatisfied parents." *Id.* at 1458. This principle is ap-plicable to a child's representative, who although bound to consult the child is not bound by the child's wishes but rather by the child's best interests, and is thus a neutral, much like a court-appointed expert witness.

Although Cooney charges that Rossiter and Bischoff were part of an illegal conspiracy to deprive her of custody of the children, they are entitled to absolute immunity because the specific acts (actual or alleged) of which she complains, such as that Bischoff and Rossiter communicated with each other about their perceptions of

Cooney and the children, that the conclusions in Rossiter's report are false, and that Bischoff may have given a draft copy of the report to Cain but not to Cooney, all occurred within the course of their court-appointed duties. Cooney does not allege that Rossiter or Bischoff engaged in misconduct outside that course, as in *Jones v. Brennan*, *supra*, 465 F.3d at 308.

The appeal presents a second issue. Because lawyer Cain and therapist Klaung are private persons, Cooney could bring them within the reach of section 1983 only by charging that they had agreed with a state officer to deprive her of constitutional rights. See *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998).

Even before *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009), a bare allegation of conspiracy was not enough to survive a motion to dismiss for failure to state a claim. E.g., *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006); *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002); *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997); *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991). It was too facile an allegation. But it was a narrow exception to the notice-pleading standard of Rule 8 of the civil rules—a rare example of a judicially imposed requirement to plead facts in a complaint governed by Rule 8.

In *Bell Atlantic* the Supreme Court went further, holding that in complex litigation a complaint must, if it is to survive dismissal, make plausible allegations. In *Iqbal* the Court extended the rule of *Bell Atlantic* to litigation in general. *Brooks v. Ross*, 2009 WL 2535731, at *5 (7th Cir.

Aug. 20, 2009); *Hensley Mfg., Inc. v. ProPride, Inc.*, 2009 WL 2778220, at *8 n. 4 (6th Cir. Sept. 3, 2009); *Fowler v. UPMC Shadyside*, 2009 WL 2501662, at *4 (3d Cir. Aug. 18, 2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 n. 7 (9th Cir. 2009).

The Court's specific concern in *Bell Atlantic* was with the burden of discovery imposed on a defendant by implausible allegations perhaps intended merely to extort a settlement that would spare the defendant that burden. In *Iqbal* it was with the inroads into the defense of official immunity—which is meant to protect the officer from the burden of trial and not merely from damages liability—that allowing implausible allegations to defeat a motion to dismiss would make. *Smith v. Duffey*, 576 F.3d 336, 339-40 (7th Cir. 2009). Thus, as the Court said in *Iqbal*, "determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 129 S. Ct. at 1950; cf. *Courie v. Alcoa Wheel & Forged Products*, 2009 WL 2497928, at *2 (6th Cir. Aug. 18, 2009).

In other words, the height of the pleading requirement is relative to circumstances. We have noted the circumstances (complexity and immunity) that raised the bar in the two Supreme Court cases. This case is not a complex litigation, and the two remaining defendants do not claim any immunity. But it may be paranoid pro se litigation, arising out of a bitter custody fight and alleging, as it does, a vast, encompassing conspiracy; and before defendants in such a case become entangled in

discovery proceedings, the plaintiff must meet a high standard of plausibility.

Even before the Supreme Court's new pleading rule, as we noted, conspiracy allegations were often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough. The complaint in this case, though otherwise detailed, is bereft of any suggestion, beyond a bare conclusion, that the remaining defendants were leagued in a conspiracy with the dismissed defendants. It is not enough (and would not have been even before *Bell Atlantic* and *Iqbal*) that the complaint charges that "Bischoff and Dr. Lyle Rossiter, with the aid of Judge Nordquist, Dan Cain, and Brian Klaung continued the ongoing violations of Plaintiff, Deborah's Constitutional rights." That is too vague. With regard to Cain, the only specific allegations in the complaint are that he encouraged Bischoff to tell Rossiter to complete his report "expeditiously"; that he received Rossiter's report before Cooney did; and that he "took control" of the meeting in camera in which all the attorneys discussed the report with Judge Nordquist. The only specific allegation regarding Klaung is that he reported Cooney to the child welfare authority several months after she lost custody of the children. No factual allegations tie the defendants to a conspiracy with a state actor. See, e.g., *Fries v. Helsper*, *supra*, 146 F.3d at 457-58; *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

Cooney's final argument is that the district court abused its discretion in denying her motion under Rule 59(e) of

the Federal Rules of Civil Procedure to be permitted to file a second amended complaint that would cure the pleading deficiencies that the court cited in its opinion dismissing the first amended complaint. She had filed that complaint after the defendants filed motions to dismiss her original complaint, and from those motions she was aware of the pleading hurdles that she would need to clear. As we said in *Harris v. City of Auburn*, 27 F.3d 1284, 1287 (7th Cir. 1994), a plaintiff who seeks to amend her complaint post-judgment "had better provide the district court with a good reason." Cooney provided the court with no reason.

AFFIRMED.