# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Vlastelica v. Brend*, 2011 IL App (1st) 102587

---

| | |
|---|---|
| Appellate Court Caption | MILIJANA VLASTELICA, Individually and as Next Friend of Kristian N. Chehaiber, Plaintiffs-Appellants, v. JEFFREY W. BREND and LEVIN AND BREND, P.C., Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-10-2587 |
| Filed | August 8, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's complaint against the child representative appointed in plaintiff's underlying action to dissolve her marriage and his law firm alleging legal malpractice, intentional breach of fiduciary duty and intentional interference with plaintiff's custody rights was properly dismissed based on the finding that defendants were absolutely immune from civil liability for defendant's work performed as child representative. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-001908; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Milijana Vlastelica, of Naperville, appellant *pro se*.

Meckler Bulger Tilson Marick & Pearson, LLP, of Chicago (Bruce R. Meckler, Brian J. Williams, and Jeffrey B. Greenspan, of counsel), for appellees.

Panel

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Presiding Justice Hall and Justice Lampkin concurred in the judgment and the opinion.

**OPINION**

¶ 1    Plaintiffs, Milijana Vlastelica (Milijana), individually and as next friend of her minor son, Kristian N. Chehaiber (Kristian), filed a three-count complaint against the child representative appointed in the underlying divorce action, Jeffrey W. Brend (Brend), and Brend's private law firm Levin and Brend, P.C. (collectively referred to as defendants). The complaint alleged: (1) legal malpractice; (2) intentional breach of fiduciary duty; and (3) intentional interference with Milijana's custody rights. The circuit court granted defendants' motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)), finding that defendants were absolutely immune from civil liability for Brend's work performed as child representative. Plaintiffs filed a motion to reconsider, which the circuit court denied. Plaintiffs appeal. We affirm.

¶ 2    In May 2000, Manheir Chehaiber (Manheir) filed a petition for dissolution of marriage to Milijana. In May 2002, the parties entered into a marital settlement agreement that was incorporated into a judgment for dissolution of marriage (the dissolution judgment). The dissolution judgment reserved various issues, including custody of their minor son, Kristian, child support, and visitation rights. The circuit court subsequently awarded custody of Kristian to Milijana; however, visitation and certain other issues not addressed by the dissolution judgment remained open.

¶ 3    In connection with these open issues, the circuit court appointed Brend as child representative for Kristian in September 2003. After Brend's appointment, Milijana filed a motion for substitution of judges. In that motion, Milijana accused the court of being prejudiced against her and of deliberately ignoring the basic principles of law. Milijana also accused Brend of improper and fraudulent conduct. The circuit court denied the motion and imposed sanctions against Milijana, finding there was no evidence supporting the allegations that Brend had engaged in fraudulent conduct. Milijana appealed. We affirmed the sanctions. See *In re Marriage of Chehaiber*, No. 2-07-0117 (2008) (unpublished order under Supreme

-2-

Court Rule 23). Milijana also filed two separate motions to discharge Brend. In her first motion, Milijana alleged that Brend was biased against her as evidenced by: (1) his recommending a visitation schedule favoring Manheir; (2) his telling her that previous orders regarding custody and other matters could be modified; (3) his "screaming in [her] face" that he would "come after" her if she told the circuit court of her belief that Manheir was violating court orders; and (4) his filing a motion *in limine* to bar her from testifying at a hearing regarding visitation. The circuit court denied this motion.

¶ 4        In her second motion, Milijana alleged that Brend improperly attempted to influence Dr. Doris Van Byssum, a psychologist whom the circuit court appointed to evaluate custody and visitation in this case. Milijana again sought Brend's discharge as child representative. The circuit court denied this motion too. Milijana appealed. We affirmed. See *In re Marriage of Chehaiber,* Nos. 2-08-0375, 2-08-1030 cons. (2009) (unpublished order under Supreme Court Rule 23).

¶ 5        Brend remained Kristian's child representative until March 27, 2008, when Milijana's and Manheir's dissolution of marriage was fully adjudicated and became final.

¶ 6        On February 11, 2010, plaintiffs filed their three-count complaint against defendants. Counts I and II were brought by Milijana as next friend of Kristian. Count I was for legal malpractice, while count II was for intentional breach of fiduciary duty. Count III was brought by Milijana individually and was for intentional interference with her custody rights.

¶ 7        Count I's claim for legal malpractice alleged that Brend met with Milijana at her house on November 5, 2003, and "wanted to do everything all over as if the parties never had a custody trial." Brend insisted on discussing the issues of Kristian's school, religious upbringing, and custody, all of which had been resolved by the court; however, Brend refused to discuss certain issues that had not yet been decided, such as visitation rights, child support, division of holidays and vacation time. Brend also refused to discuss the subjects of Manheir's alleged anti-Semitism and he disregarded derogatory comments Manheir made about Milijana in Kristian's presence. Plaintiffs alleged that on November 12, 2003, Brend met with both Milijana and Manheir and tried to convince Milijana that the noncustodial parent, Manheir, had the right to raise Kristian as a Muslim. When Milijana told Brend that Manheir repeatedly violated court orders and she needed to bring it to the circuit court's attention, Brend screamed, "Oh no you will not do that. I will not allow you to do that. And if you do that I will personally come after you."

¶ 8        Plaintiffs alleged that Brend's refusal to discuss pending issues, and his insistence on discussing the "nonissues," entangled plaintiffs in "stressful and unnecessary litigation for an additional five years."

¶ 9        Plaintiffs further alleged that Brend committed legal malpractice when he contacted Milijana by phone prior to January 9, 2004, and attempted to "bully" her into agreeing that Manheir should be given physical custody of Kristian and that her visitation should be limited to four hours per week and every other weekend. Plaintiffs contended that Brend was "*de facto*, re-deciding the custody award entirely on his own, without any basis in law or fact, without any hearing whatsoever," and contrary to Kristian's best interests.

¶ 10        Plaintiffs also alleged that Brend committed legal malpractice by: advocating that the

parties should maintain the parenting schedule as agreed upon in 2002, as if the custody trial of 2003 never even took place; and filing numerous pleadings designed to prevent Milijana from having an evidentiary hearing on the issue of Manheir's visitations and by seeking to bar Milijana from testifying thereto.

¶ 11 Plaintiffs alleged that on August 3, 2006, the circuit court ordered the parties to undergo a second custody trial and appointed Dr. Van Byssum as the "custody evaluator." Milijana filed a motion to reconsider or for a finding under Illinois Supreme Court Rule 308(a) (eff. Feb. 26, 2010) and a motion to stay the custody evaluation. Plaintiffs alleged that Brend committed legal malpractice by failing to file a response to Milijana's motions or appear at various hearings. Plaintiffs contended that but for Brend's negligent acts, plaintiffs would not have become entangled in an unnecessary second custody battle from May 23, 2005, until November 11, 2007.

¶ 12 Plaintiffs alleged that Brend committed legal malpractice during a pretrial conference on September 18, 2007, when he falsely informed the court that the parenting "arrangement" did not interfere with Kristian's extracurricular activities. Plaintiffs contended that Brend knew or should have known that Kristian had been forced to quit his swim team and Tae Kwon Do because Manheir did not want Kristian to participate in activities that would interfere with his parenting time. Plaintiffs alleged that Brend committed legal malpractice on November 8, 2007, when he approached Milijana in the hallway of the courthouse and tried to convince her that even though she was the custodial parent, Manheir was entitled to an equal amount of parenting time with Kristian. Plaintiffs contended that but for Brend's unsupported argument that Manheir was entitled to an equal amount of parenting time with Kristian, the issue of Manheir's visitation rights would have been decided sooner.

¶ 13 Plaintiffs alleged that Brend committed legal malpractice on December 11, 2007, prior to Dr. Van Byssum's deposition, when Brend attempted to wrongfully influence Dr. Van Byssum by telling her that "Milijana was the sole cause of the litigation and that Milijana was obsessed with obtaining at least four days a week with the minor child solely for the purpose of receiving child support from Manheir." Plaintiffs alleged Brend committed legal malpractice during the hearing on Milijana's amended motion to modify Manheir's visitation when he successfully objected to Dr. Van Byssum testifying to what Kristian told her about his preferences regarding his schedule with his parents. Plaintiffs alleged that but for Brend's objection, the court would have heard from Dr. Van Byssum that Kristian wanted to spend more time with Milijana and that he was afraid of Manheir. Finally, plaintiffs alleged Brend committed further legal malpractice during the evidentiary hearing, and during the hearing on the motion to reconsider, when his questions of the witness and his comments to the court revealed his bias in favor of Manheir and against Milijana.

¶ 14 In count II, plaintiffs claimed that Brend intentionally breached his fiduciary duty toward Kristian when he engaged in the conduct described above favoring Manheir. In count III, plaintiffs claimed that Brend intentionally interfered with Milijana's custody rights when he engaged in the alleged conduct favoring Manheir.

¶ 15 Plaintiffs cursorily pleaded that Brend's law firm, Levin and Brend, P.C., also was liable for Brend's legal malpractice, intentional breach of fiduciary duty, and intentional

-4-

interference with Milijana's custody rights because 25% of unspecified legal work rendered to Kristian was performed by Levin and Brend's attorneys other than Brend himself.

¶ 16 The circuit court granted defendants' section 2-619 motion to dismiss, finding that they were absolutely immune from civil liability for Brend's work performed as child representative. Plaintiffs filed a motion for reconsideration, which the circuit court denied. Plaintiffs filed this timely appeal.

¶ 17 A section 2-619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters appearing on the face of the complaint or established by external submissions that act to defeat the claim. *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569-70 (2002). The court construes the pleadings and supporting documents in the light most favorable to plaintiffs. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008). The issue on appeal is " 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Czarobski*, 227 Ill. 2d at 369 (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993)). Review is *de novo. Czarobski*, 227 Ill. 2d at 369; *Krilich*, 334 Ill. App. 3d at 571.

¶ 18 In the present case, there are no questions of material fact; the issue is whether the circuit court erred, as a matter of law, by dismissing plaintiffs' complaint on the basis that defendants were absolutely immune from civil liability for Brend's work performed as a child representative.

¶ 19 Plaintiffs argue that the circuit court erred in dismissing their complaint because child representatives are not absolutely immune from civil liability. Plaintiffs contend that absolute immunity from liability arises from only two possible sources, statutory or common law. The relevant statute here, section 506(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act), provides for three types of attorney appointments during proceedings involving the general welfare of a minor child, including visitation: (1) an attorney to represent the child; (2) a guardian *ad litem*; and (3) a child representative. 750 ILCS 5/506(a)(1), (a)(2), (a)(3) (West 2010). Section 506(a) does not accord any immunity from civil liability for the work performed thereby. Section 506(a) states in pertinent part:

"(a) Duties. In any proceedings involving the support, custody, visitation, education, parentage, property interest, or general welfare of a minor or dependent child, the court may, on its own motion or that of any party, appoint an attorney to serve in one of the following capacities to address the issues the court delineates:

(1) Attorney. The attorney shall provide independent legal counsel for the child and shall owe the same duties of undivided loyalty, confidentiality, and competent representation as are due an adult client.

(2) Guardian ad litem. The guardian ad litem shall testify or submit a written report to the court regarding his or her recommendations in accordance with the best interest of the child. The report shall be made available to all parties. The guardian ad litem may be called as a witness for purposes of cross-examination regarding the guardian ad litem's report or recommendations. The guardian ad litem shall investigate the facts of the case and interview the child and the parties.

(3) Child representative. The child representative shall advocate what the child representative finds to be in the best interests of the child after reviewing the facts and circumstances of the case. The child representative shall meet with the child and the parties, investigate the facts of the case, and encourage settlement and the use of alternative forms of dispute resolution. The child representative shall have the same authority and obligation to participate in the litigation as does an attorney for a party and shall possess all the powers of investigation as does a guardian ad litem. The child representative shall consider, but not be bound by, the expressed wishes of the child. A child representative shall have received training in child advocacy or shall possess such experience as determined to be equivalent to such training by the chief judge of the circuit where the child representative has been appointed. The child representative shall not disclose confidential communications made by the child, except as required by law or by the Rules of Professional Conduct. The child representative shall not render an opinion, recommendation, or report to the court and shall not be called as a witness, but shall offer evidence-based legal arguments. The child representative shall disclose the position as to what the child representative intends to advocate in a pre-trial memorandum that shall be served upon all counsel of record prior to the trial. The position disclosed in the pre-trial memorandum shall not be considered evidence. The court and the parties may consider the position of the child representative for purposes of a settlement conference." 750 ILCS 5/506(a)(1), (a)(2), (a)(3) (West 2010).

¶ 20    Plaintiffs argue that since section 506(a)(3) of the Act does not confer any immunity upon child representatives, the only other possible source of immunity would be the common law. Plaintiffs contend that their review of the common law indicates no immunity is provided for child representatives.

¶ 21    We disagree. The Supreme Court has recognized that the common law provides for absolute immunity for judges (see *Briscoe v. LaHue*, 460 U.S. 325, 334-35 (1983)), and the Seventh Circuit Court of Appeals (hereinafter, the Seventh Circuit) has held that guardians *ad litem* and child representatives are entitled to the same absolute immunity because they are "arms of the court." *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). The *Cooney* court stated:

> "Guardians ad litem and court-appointed experts, including psychiatrists, are absolutely immune from liability for damages when they act at the court's direction. [Citations.] They are arms of the court, much like special masters, and deserve protection from harassment by disappointed litigants, just as judges do. Experts asked by the court to advise on what disposition will serve the best interests of a child in a custody proceeding need absolute immunity in order to be able to fulfill their obligations 'without the worry of intimidation and harassment from dissatisfied parents.' [Citation.] This principle is applicable to a child's representative, who although bound to consult the child is not bound by the child's wishes but rather by the child's best interests, and is thus a neutral, much like a court-appointed expert witness." *Cooney*, 583 F.3d at 970.

¶ 22    Plaintiffs here argue that as a federal court decision, *Cooney* is not binding on us (see *Werderman v. Liberty Ventures, LLC*, 368 Ill. App. 3d 78, 84 (2006)) and should not be followed unless its logic is persuasive. Plaintiffs contend *Cooney*'s logic is not persuasive, because it wrongly equated a child representative with a guardian *ad litem*. Plaintiffs note that, under section 506(a)(2) of the Act (750 ILCS 5/506(a)(2) (West 2010)), the guardian *ad litem* acts as a witness who is empowered to advocate for the child's best interests via his written reports and recommendations, whereas section 506(a)(3) provides that the child representative advocates for the child's best interests while "participat[ing] in the litigation as does an attorney for a party." 750 ILCS 5/506(a)(3) (West 2010). Plaintiffs contend that as an attorney representing the child's best interests, the child representative stands in a fiduciary relationship with the child, owes a duty of confidentiality to the child, and is no more an "arm of the court" than the parties' own attorneys. Plaintiffs also contend the *Cooney* court improperly equated a child representative with a "neutral" court-appointed expert witness. Plaintiffs argue that while a child representative "is neutral to the interests of the parents," he is not "neutral" to the best interests of the child.

¶ 23    Contrary to plaintiffs' arguments, we find *Cooney*'s logic persuasive. For a court deciding a custody matter, " 'the issue that singly must be decided is the best interest of the child.' " *In re Austin W.*, 214 Ill. 2d 31, 49 (2005) (quoting *In re Ashley K.*, 212 Ill. App. 3d 849, 879 (1991)). The child representative appointed by the court assists in this determination by meeting with the child and the parties, investigating the facts of the case, and advocating for the child's best interests after reviewing the facts and circumstances of the case. We agree with *Cooney*'s characterization of a child representative as a "hybrid" of a child's attorney and a child's guardian *ad litem* who acts as an arm of the court in assisting in a neutral determination of the child's best interests. *Cooney*, 583 F.3d at 969-70. We also agree with *Cooney*'s holding that to best aid the court in its determination of the child's best interests, the child representative must be accorded absolute immunity so as to allow him to fulfill his obligations without worry of harassment and intimidation from dissatisfied parents. *Cooney*, 583 F.3d at 970.

¶ 24    Plaintiffs contend that the finding that child representatives are absolutely immune from civil liability runs counter to the so-called "functional" approach to immunity set forth by the United States Supreme Court. Pursuant to the functional approach, absolute immunity flows not from a person's rank or title or his position within the government, but rather from the nature of his responsibilities. *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985). The Supreme Court has identified the following factors relevant to the determination of whether a person is entitled to absolute immunity: "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Cleavinger*, 474 U.S. at 202.

¶ 25    In *Golden v. Nadler, Pritikin & Mirabelli, LLC*, No. 05 C 0283, 2005 WL 2897397, at *10 (N.D. Ill. Nov. 1, 2005), the United States District Court held that these factors "weigh strongly in favor" of granting child representatives absolute immunity:

            "Child custody battles can be emotionally charged, and child representatives in

contentious cases may be subject to harassment and intimidation if they are not immune from suit. Further, the dissatisfied party can bring any concerns before the state court judge if the child representative has acted inappropriately. While in theory the process should not be adversarial because all parties in a custody proceeding should be concerned with the best interests of the child, in practice these proceedings are often adversarial because the parties disagree as to what those interests are. These factors show that absolute immunity is appropriate for child representatives involved in custody determinations." *Golden*, 2005 WL 2897397, at *10.

¶ 26    We agree with *Golden* that these factors weigh in favor of a finding that absolute immunity should be accorded child representatives involved in custody determinations. Further, on the specific facts of this case, application of the factors indicates that Brend should be accorded absolute immunity for civil liability arising out of his work performed as child representative. Two of the factors to be considered are "the need to assure that the individual can perform his functions without harassment or intimidation" and "the adversary nature of the process." *Cleavinger*, 474 U.S. at 202. In the case at bar, the child custody battle was quite adversarial and emotionally charged; Milijana accused her husband Manheir of violating court orders and she accused Brend of unduly favoring Manheir, of lying to the court, and of screaming in her face and threatening her. Given the adversarial nature of the proceedings, absolute immunity was required to allow Brend to perform his work without harassment or intimidation.

¶ 27    Two other factors to be considered are "the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct" and "the correctability of error on appeal."[1] *Cleavinger*, 474 U.S. at 202. In the present case, such safeguards are provided by section 506(a)(3) of the Act, which states that child representatives must be attorneys who have received "training in child advocacy" or who possess experience "determined to be equivalent to such training by the chief judge of the circuit where the child representative has been appointed." 750 ILCS 5/506(a)(3) (West 2010). Such training or equivalent experience reduces the likelihood of the child representative committing unconstitutional conduct. The child representative is also restrained from committing unconstitutional conduct by his professional obligations as an attorney. In the event unprofessional conduct occurs, the aggrieved party has recourse with the Attorney Registration and Disciplinary Commission (ARDC). The aggrieved party also may bring her concerns before the judge; in the case at bar, Milijana availed herself of that opportunity by filing multiple motions seeking Brend's discharge and by appealing the circuit court's denial of said motions. Finally, on the court's own motion or that of a party "for good cause shown," the court may appoint an additional attorney to act as child representative. 750 ILCS 5/506(a-3) (West 2010). Given the presence of all these safeguards against unconstitutional conduct and the correctability of error on appeal, "there is a less pressing need for individual suits to correct constitutional error." *Butz v. Economou*, 438 U.S. 478,

---

[1]The remaining factors, "insulation from political influence" and "the importance of precedent" (*Cleavinger*, 474 U.S. at 202), relate more to judicial immunity and are not applicable here.

512 (1978).

¶ 28    Thus, contrary to plaintiffs' arguments here, the functional approach to immunity supports the circuit court's finding that Brend was entitled to absolute immunity for his work performed as child representative. Such absolute immunity extends to all conduct that "occurred within the course of [the child representative's] court-appointed duties." *Cooney*, 583 F.3d at 970. Plaintiffs argue, though, that Brend stepped outside the role of child representative when he allegedly: "bullied" Milijana and insisted she agree to give physical custody of Kristian to Manheir and limit her visitation to four hours per week and every other weekend; chose not to respond to various pleadings or attend certain hearings; chose not to argue Kristian's best interests relating to the child's desire to swim, engage in religious education, and perform Tae Kwon Do; lied to Dr. Van Byssum about Milijana being the cause of the litigation; lied to the circuit court about Kristian's happiness with the current parenting arrangement; and threatened to personally come after Milijana if she told the court about how Manheir was violating court orders. Plaintiffs contend that since all this conduct occurred outside the scope of his duties as child representative, Brend is not immune therefor.

¶ 29    We disagree with plaintiffs' characterization of Brend's conduct as taking place outside his role as child representative. Brend committed all of the complained-of conduct after his appointment as child representative and in pursuit of his duties to meet with the parties, investigate the facts of the case, encourage settlement, and participate in the litigation. All of the alleged misfeasance and malfeasance committed by Brend occurred within the course of his court-appointed duties and are subject to absolute immunity.

¶ 30    Plaintiffs next argue that we should follow a Maryland case, *Fox v. Wills*, 890 A.2d 726 (Md. 2006), in finding that a child representative is not entitled to absolute immunity. *Fox* is inapposite, as the court there held that an attorney appointed for a child pursuant to section 1-202 of the Family Law Article (Md. Code Ann., Fam. Law § 1-202 (West 1984 & 2004 repl. vol.)) was not entitled to immunity due to the short and succinct nature of the statutory language authorizing the court to " 'appoint to represent the minor child counsel who may not represent any party to the action.' " *Fox*, 890 A.2d at 734 (quoting Md. Code Ann., Fam. Law § 1-202 (West 1984 & 2004 repl. vol.)). The Maryland court noted that, unlike statutes in other states, section 1-202 of the Family Law Article contained no language defining the duties of attorneys appointed to represent minor children or indicating that such attorneys act as arms of the court. *Fox*, 890 A.2d at 733-35. Section 1-202 of the Family Law Article reads similarly to section 506(a)(1) of the Act, which provides for the appointment of an "attorney [who] shall provide independent legal counsel for the child." 750 ILCS 5/506(a)(1) (West 2010). However, section 506(a)(1) is not at issue here; rather, section 506(a)(3) is at issue. Section 506(a)(3) expressly provides that the child representative is to investigate the facts of the case and advocate solely for the child's best interests. As discussed, we agree with the Seventh Circuit's holding in *Cooney* that a child representative appointed pursuant to section 506(a)(3) is an arm of the court assisting in a neutral determination of the child's best interests and, as such, that he is absolutely immune from liability arising therefrom.

¶ 31    We recognize that subsequent to *Cooney*, the Seventh Circuit recently has again considered absolute immunity of child representatives in *Golden v. Helen Sigman &*

*Associates, Ltd.*, 611 F.3d 356 (7th Cir. 2010). In *Golden*, Bruce Golden's wife, Jody Rosenbaum, filed for divorce in Illinois state court. *Golden*, 611 F.3d at 359. Golden subsequently brought an action under 42 U.S.C. § 1983 (2006) against the court-appointed child representative, Helen Sigman, alleging that she maligned his reputation and abdicated her duty of neutrality by favoring Rosenbaum in the custody proceedings. *Golden*, 611 F.3d at 359. The district court dismissed Golden's section 1983 action against Sigman, and Golden appealed. *Golden*, 611 F.3d at 360.

¶ 32    The Seventh Circuit began its analysis by noting its holding in *Cooney* that child representatives are a hybrid of a child's attorney and a child's guardian *ad litem* and that child representatives are absolutely immune for conduct occurring within the course of their court-appointed duties. *Golden*, 611 F.3d at 361. The Seventh Circuit then addressed Golden's allegations that Sigman engaged in misconduct outside the scope of her role as child representative. *Golden*, 611 F.3d at 361. Golden alleged that Sigman made false and misleading communications with the parties about matters related to the custody dispute. *Golden*, 611 F.3d at 361. The Seventh Circuit held that even assuming the truth of these allegations, Sigman still was carrying out her responsibilities as a child representative by speaking with the relevant actors about the custody proceedings and investigating the facts. *Golden*, 611 F.3d at 361. In this capacity, her actions closely resembled those of a guardian *ad litem* who was acting as an arm of the court and, as such, she was immune therefor. *Golden*, 611 F.3d at 361.

¶ 33    The Seventh Circuit found "[m]ore problematic" Golden's allegations relating to Sigman's work as an advocate, such as her preparation of certain court orders and her efforts to eliminate the role of the court-appointed psychiatrist:

> "Though these tasks are part and parcel of a child representative's statutory duties, they involve a form of advocacy that more closely resembles the work carried out by a public defender than that of a guardian *ad litem*. [Citation.] Since public defenders are not absolutely immune from suit, *Tower v. Glover*, 467 U.S. 914, 921-23 *** (1984), child representatives may not be protected when they function as a child's attorney. [Citation.] As the court in *Cooney* did not confront allegations implicating a child representative's actions as an advocate, it did not have the opportunity to comment on this issue." *Golden*, 611 F.3d at 361.

¶ 34    The Seventh Circuit ultimately decided to "lay [the issue] aside for another day" because the *Rooker-Feldman* doctrine, which prevents a party who is complaining about an injury caused by a state-court judgment from seeking redress in a lower federal court, barred it from reviewing whether Sigman violated Golden's rights when she acted as the child's advocate. *Golden*, 611 F.3d at 361-62 (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).

¶ 35    The *Rooker-Feldman* doctrine does not similarly bar us from considering the issue whether Brend is entitled to immunity for his work as an advocate for Kristian's best interests, and so we consider the issue on the merits. For the reasons that follow, we hold that Brend is entitled to absolute immunity for his work performed as an advocate for Kristian's best interests. We begin our analysis by noting that *Tower v. Glover*, cited by *Golden*, only

-10-

addressed whether state public defenders (*not* child advocates) are immune from liability under section 1983 for intentional misconduct. *Tower*, 467 U.S. at 923. The Supreme Court held that public defenders were not immune from liability under section 1983 for intentional misconduct because: (1) section 1983 admits no immunities on its face; (2) no immunity existed for public defenders at common law when the Civil Rights Act was enacted in 1871; (3) the public defender's "reasonably close 'cousin,' " the English barrister, has never enjoyed immunity from liability for intentional misconduct; (4) no state appellate courts have concluded that public defenders are immune for intentional misconduct; and (5) it was for the Congress, not the Supreme Court, to establish immunities from section 1983 actions. *Tower*, 467 U.S. at 920-23.

¶ 36    Unlike *Tower*, the present case does not involve a section 1983 action against a public defender, but rather an action for legal malpractice, intentional breach of fiduciary duty, and intentional interference with custody rights against a child representative appointed under section 506(a)(3). Although a child representative's work includes advocacy, as does a public defender's, their roles are not identical and therefore *Tower*'s holding that public defenders are accorded no immunity under section 1983 for intentional misconduct is not applicable here. As discussed above, section 506(a) sets forth three different categories of attorneys that the court may appoint in proceedings involving "the support, custody, visitation, education, parentage, property interest, or general welfare of a minor or dependent child": (1) the attorney for the child appointed pursuant to section 506(a)(1); (2) the guardian *ad litem* appointed pursuant to section 506(a)(2); and (3) the child representative appointed pursuant to section 506(a)(3). 750 ILCS 5/506(a)(1), (a)(2), (a)(3) (West 2010). A public defender is more akin to an attorney for the child appointed pursuant to section 506(a)(1) who provides "independent legal counsel for the child" and who owes "the same duties of undivided loyalty, confidentiality, and competent representation as are due an adult client." 750 ILCS 5/506(a)(1) (West 2010). A public defender generally must "abide by a client's decisions concerning the objectives of representation" (see Rule 1.2(a) of the Illinois Rules of Professional Conduct (eff. Aug. 1, 1990)) and "follow the lawful instructions of [his] client." *People v. Wilkerson*, 123 Ill. App. 3d 527, 532 (1984). By contrast, a child representative appointed pursuant to section 506(a)(3) is not required to provide independent legal counsel to the child and is not bound by the express wishes of the child, but rather he must advocate what he finds to be in the child's best interests after meeting with the parties and investigating the facts of the case. 750 ILCS 5/506(a)(3) (West 2010). He also encourages settlement and the use of alternative forms of dispute resolution. 750 ILCS 5/506(a)(3) (West 2010). Although a child representative is not intended to abrogate the decision making power of the trier of fact or act in the role of a surrogate judge (750 ILCS 5/506(a-5) (West 2010)), his investigative and advocacy roles aid the court making a neutral determination of the child's best interests. In so aiding the court in making a neutral determination of the child's best interests, the child representative is acting as an arm of the court even while performing his role as an advocate. Accordingly, we hold that the child representative is entitled to absolute immunity for his work as an advocate occurring within the course of his court-appointed duties.

¶ 37    Therefore, we affirm the order of the circuit court dismissing plaintiffs' claims against

Brend. We also affirm the order dismissing plaintiffs' claims against Brend's law firm, Levin and Brend, where the only basis of liability pleaded was that 25% of the legal work rendered to Kristian was performed by Levin and Brend's attorneys other than Brend himself. Plaintiffs failed to plead the specific work performed by Levin and Brend attorneys other than Brend himself. To the extent plaintiffs' complaint is premised on Levin and Brend's liability under agency principles, the dismissal of the agent (Brend) entitles the principal (Levin and Brend) to dismissal. *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 416 (2007).

¶ 38     Finally, plaintiffs make cursory reference to child representative immunity as violating equal protection principles. Plaintiffs' cursory reference is insufficient to comply with Rule 341(h)(7)'s requirement that their brief contain arguments in support of their issues. See Ill. S. Ct. R. 341(h)(7) (eff. Sept 1, 2006). Accordingly, this issue is waived.

¶ 39     For the foregoing reasons, we affirm the circuit court. As a result of our disposition of this case, we need not address defendants' collateral estoppel and public policy arguments.

¶ 40     Affirmed.