In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1716

MATTHEW F. HALE,

*Plaintiff-Appellant*,

*v.*

COMMITTEE ON CHARACTER AND FITNESS FOR
THE STATE OF ILLINOIS, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 5065—**John W. Darrah**, *Judge.*

ARGUED OCTOBER 30, 2002—DECIDED JULY 14, 2003

Before FLAUM, *Chief Judge*, and BAUER and DIANE P.
WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Matthew Hale is a pub-
lic advocate of white supremacy and the leader of an
organization (formerly called the World Church of the
Creator[1]) dedicated to racism and anti-Semitism. He comes

---

[1] In *TE-TA-MA Truth Foundation-Family of URI, Inc. v. World
Church of the Creator*, 297 F.3d 662 (7th Cir. 2002), we ordered
Hale to rename the organization, formerly known as the World
Church of the Creator, for infringing on another group's trade-
(continued...)

before us today because he seeks to be admitted to practice law in the state of Illinois. The Illinois State Bar requires applicants not only to demonstrate proficiency in the law on a written bar examination, but also to pass a character and fitness exam. Hale succeeded in satisfying the first of these hurdles, but not the second. His defeat came at the hands of the Committee on Character and Fitness (Committee) appointed by the Illinois Supreme Court, which found him unfit to practice law. Hale challenged that determination both before the Illinois Supreme Court and then the Supreme Court of the United States, claiming among other things that the Committee had violated his First Amendment rights by acting solely on the basis of his viewpoints. Unsuccessful in that effort, he then turned to the U.S. District Court for the Northern District of Illinois with a fresh lawsuit again raising his First Amendment claim, among other constitutional challenges. This time he lost because the district court concluded, in part, that the *Rooker-Feldman* doctrine did not permit it to review the earlier decision of the Illinois Supreme Court. See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *District of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 486 (1983). Bearing in mind the unique procedures that the Illinois Supreme Court uses for bar admission decisions (as opposed to its review of litigated cases), we find that Hale has had his day in the

---

[1] (...continued)

mark. Hale refused to comply. Earlier this year, Hale was arrested for conspiring to kill the district court judge presiding in the trademark infringement case, and is currently being held without bond. Jodi Wilgoren, *White Supremacist is Held in Ordering Judge's Death,* N.Y. Times, Jan. 9, 2003, at A1. In light of these events, it is difficult to imagine that the Committee would vote positively today in favor of Hale's character and fitness, though that is not the strict issue before us today.

state courts, and that the district court correctly dismissed his suit.

# I

Hale's avowed mission in life is to bring about the hegemony of the white race, the legal abolition of equal protection, and the deportation of non-white Americans by non-violent means. With these goals in mind, Hale attended Southern Illinois University School of Law, graduating with a J.D. and passing the Illinois bar exam in 1998. In his application for admission to the Illinois State Bar, Hale disclosed his active role in promoting racism and anti-Semitism.

Hale's application was referred to a single member of the Committee on Character and Fitness of the Third Judicial District of the State of Illinois (Third District Committee), pursuant to Rule 5.1(a) of the Rules of Procedure of the Board of Admissions and the Committee on Character and Fitness (the Rules of Procedure). This member advised the Board that he was not prepared to recommend that Hale be admitted to practice law in Illinois.

In accordance with Rule 5.2(a) of the Rules of Procedure, the Chairperson of the Third District Committee assigned Hale's application to a three-person "Inquiry Panel" for further review. On December 18, 1998, in a 2-1 written decision, the Inquiry Panel recommended that the Committee refuse to approve Hale's admission to practice law in Illinois. The Committee rejected the argument that Hale was merely an applicant with distasteful views that were nonetheless protected under the First Amendment. Instead, it said, Hale's active commitment to bigotry under "any civilized standards of decency" demonstrated a "gross deficiency in moral character, particularly for lawyers who have a special responsibility to uphold

the rule of law for all persons." In short, the Committee believed that Hale was likely to commit acts of various kinds in the future that were inconsistent with membership in the bar.

The Inquiry Panel's recommendation that Hale not be certified resulted in the automatic creation by the Committee of a five-member "Hearing Panel" to determine with finality whether Hale should be certified for admission to practice law. The Panel held a hearing on April 10, 1999, at which multiple witnesses testified that Hale possessed the requisite character and fitness to practice law. Hale himself testified before the Panel, and asserted that he was prepared to comply with the Rules of Professional Conduct. He also indicated, however, that he believed that the Rules applied only while he worked as an attorney, and not while he practiced his religion.

On June 30, 1999, the Hearing Panel denied Hale's application. It began by drawing a distinction between Hale's First Amendment right to express ideas and his right to become a member of the Illinois bar, commenting that the case was "not about Mr. Hale's First Amendment rights. The issue here is whether Mr. Hale possesses the requisite character and fitness for admission for the practice of law." The Hearing Panel based its decision that Hale had not satisfied his burden of proving that he possessed the requisite character and fitness on several findings. First, the Hearing Panel believed that Hale's outspoken intent to continue discriminating in his private life, especially taken together with negative character evidence such as academic probation, an order of protection, and a list of arrests (not convictions), was inconsistent with the Rules of Professional Conduct. The Hearing Panel was also concerned about Hale's refusal to repudiate a 1995 letter he wrote in response to published commentary in support of affirmative action, in which Hale referred to the female author's "rape at the hands of a nigger

beast." The letter, the Hearing Panel found, was insulting, inappropriate, and showed a "monumental lack of sound judgment" that would put Hale "on a collision course with the Rules of Professional Conduct." Finally, the Hearing Panel concluded that Hale was not candid and open with it during the hearing.

Pursuant to Supreme Court Rule 708, Hale petitioned the Illinois Supreme Court to reconsider the Committee's denial. Hale asked the Illinois Supreme Court to review the constitutionality of the Committee's decision, in addition to challenging the constitutionality of the disciplinary rule against discrimination (Rule 8.4(a)(5) of the Illinois Rules of Professional Conduct). Hale's complaint squarely raised the claim that the Committee had violated the First and Fourteenth Amendments when it arbitrarily denied his bar application, because it based its decision not on any conduct in which Hale may have engaged, but instead solely on its speculation about his likely future conduct and its distaste for his political and religious beliefs. The Committee filed a response in opposition to Hale's petition for review, as it was required to do under Rule 708. It asked the Illinois Supreme Court to sustain its decision and to deny certification of Hale's bar application. On November 12, 1999, the Illinois Supreme Court denied Hale's petition for review—an action that had the effect of leaving the Committee's decision in place. Justice Heiple dissented from the court's refusal to conduct plenary proceedings in the case.

Hale then filed a petition for a writ of *certiorari* with the Supreme Court of the United States, in which he presented his constitutional challenges to the Illinois Supreme Court's decision. The Supreme Court of the United States denied his petition without comment. *Hale v. Committee on Character and Fitness*, 530 U.S. 1261 (2000).

Frustrated with what he perceived to be a total lack of access to a judicial body that would give him a full hearing

on his First Amendment claims, Hale then turned to the district court and filed the present case. His complaint named as defendants the Committee, the Board of Admissions to the Bar (Board), the Third District Committee, members of the Hearing Panel in their individual capacity, and the Illinois Supreme Court.

Counts I to IV of the complaint assert various claims under 42 U.S.C. § 1983, including "as-applied" violations of his First Amendment rights of freedom of expression and association and his Fourteenth Amendment rights to due process and equal protection. Counts V and VI seek a declaration that Rule 8.4(a)(5) of the Illinois Rules of Professional Conduct is facially unconstitutional as a violation of the First Amendment right of freedom of association and freedom of expression. Count VII seeks a declaration that Illinois Supreme Court Rule 708 and Rule 4 of the Committee's Rules of Procedure violate the Fourteenth Amendment by failing to provide bar applicants with a forum in which their constitutional challenges to the Committee's actions can be adjudicated. For each of the seven counts, Hale seeks declaratory and injunctive relief. The district court dismissed the entire lawsuit for lack of subject matter jurisdiction and on grounds of *res judicata*. This appeal followed.

## II

The central question we must decide is a procedural one: did the proceedings that culminated in the Illinois Supreme Court's decision to allow the Committee's rejection of Hale's application to stand qualify as "judicial proceedings," such that the doctrine that forbids lower federal courts to sit in review of state court decisions or the preclusion doctrines should apply? If the answer to that is yes, we are finished, because the Supreme Court of the United States has had an opportunity to consider

whether the Illinois court's decision violated federal law, and it chose not to hear the case. If the answer to that question is no, however, then this case would have to be remanded to the district court for further proceedings on the merits of his claims.

Ordinarily, the least of any court's problems in applying the *Rooker-Feldman* doctrine is whether there was a judicial proceeding at all in the state courts. Instead, courts struggle with the distinction between a *Rooker-Feldman* problem and a *res judicata* problem, see, *e.g.*, *Leaf v. Supreme Court of Wisconsin*, 979 F.2d 589, 600 (7th Cir. 1992), or with the question whether the state court's judgment is sufficiently distinct from the issue posed in federal court that independent consideration is permissible, or if on the other hand the two proceedings are "inextricably intertwined." See, *e.g.*, *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554-60 (7th Cir. 1999). On the other hand, the role of state courts in bar admissions does not present a new *Rooker-Feldman* issue. The *Feldman* case itself raised the question whether the U.S. District Court for the District of Columbia had jurisdiction to review decisions of the D.C. Court of Appeals in bar admission matters. The Court first decided that the proceedings before the D.C. Court of Appeals (the equivalent for this purpose to the Illinois Supreme Court in our case) in connection with the two petitions for waiver from a rule governing admission to the bar were judicial in nature, not legislative, ministerial, or administrative. 460 U.S. at 479. The fact that the form those proceedings took was different from that of normal judicial proceedings was immaterial. It followed that the federal court had no jurisdiction to review the D.C. Court of Appeals' decision denying the petitions for waiver. The only part of the case that was cognizable in the district court was the petitioners' general attack on the constitutionality of the rule requiring applicants for the bar to have graduated from an accredited law school.

More recently, this court held that an unsuccessful applicant to the Illinois bar could not challenge the Committee on Character and Fitness's right to demand certain medical records in an independent federal court action, because her case essentially attacked the order of the Illinois Supreme Court denying her petition for review. See *Edwards v. Illinois Bd. of Admissions to the Bar*, 261 F.3d 723, 728-31 (7th Cir. 2001). Applying the *Rooker-Feldman* analysis, the court asked whether petitioner Edwards's injury resulted from the state court judgment declining to certify her for admission to the Illinois bar, and it concluded that it did. *Id.* at 730. The remainder of her case was so inextricably intertwined with the state court's judgment that it too fell under the prohibition of the *Rooker-Feldman* doctrine.

Hale acknowledges that *Feldman* and *Edwards* both point in the direction of no jurisdiction, but he urges us to take a more careful look at the actual procedure followed by the Illinois Supreme Court and to accept the statements about Illinois procedure made in the dissenting opinion of Justice Heiple in Hale's own case. With respect to the former, we believe that there is nothing in the procedures used in Hale's case that would justify a result different from the one reached in *Feldman* and *Edwards*. With respect to the latter, it is enough to say that the views expressed by dissenting judges or justices are not binding.

The path Hale's case, and all others like it (including Edwards's), took to the Illinois Supreme Court, began after the Committee had finished all of its proceedings—that is to say, after the Hearing Panel decided to deny Hale's application once and for all. At that point, the applicant must turn to Rule 708(e) of the Illinois Supreme Court Rules, which reads as follows:

> A law student registrant or applicant who has availed himself or herself of his or her full hearing

> rights before the Committee on Character and Fitness and who deems himself or herself aggrieved by the determination of the committee may, on notice to the committee by service upon the Director of Administration for the Board of Admissions in Springfield, petition the Supreme Court for review within 35 days after service of the Committee's decision upon the law student registrant or applicant, and, unless extended for good cause shown, the Committee shall have 28 days to respond. The director shall file the record of the hearing with the Supreme Court at the time that the response of the Committee is filed.

Once the Rule 708 petition is before the Illinois Supreme Court, the court usually takes one of two actions: denial or plenary review. In the majority of cases, not surprisingly, the court denies the petition for review. Many years ago in *In re Frank*, 127 N.E. 640 (Ill. 1920), it explained that it will review the case "only where there has been an arbitrary refusal to hear and consider evidence which may be presented," or if there was a "manifest abuse of discretion." See also *In re Latimer*, 143 N.E.2d 20, 21 (Ill. 1957). More recently, the court clarified the point that the Committee's recommendation is "advisory, and neither binds this court nor limits its authority to take action." *In re Loss*, 518 N.E.2d 981, 983 (Ill. 1987).

One of Hale's concerns is that this process does not allow him to present before the court serious constitutional challenges to the Committee's decision, such as his First Amendment claim. The decision in *Latimer*, however, does not support such a narrow interpretation of the court's powers. There, the court said that "[s]ince applicant contends that certain of his constitutional rights were violated, we have set the petition down for argument and opinion." 143 N.E.2d at 22. See also *In re Anastaplo*, 121 N.E.2d 826, 828 (Ill. 1954) (Illinois Supreme Court re-

solves petitioner's constitutional challenge to the Committee's decision to reject his bar application).

But, Hale argues, the mere fact that the court *may* hear and consider a constitutional challenge does not mean that it has done so in every case. He analogizes the Illinois Supreme Court's role in Rule 708 petitions to its role in ordinary applications under its Rule 315 petitions for leave to appeal from the appellate court, or to the Supreme Court of the United States's role in ruling on petitions for a writ of *certiorari*. In both the Rule 315 situation and the *certiorari* situation, a decision by the highest court not to take a case carries with it no implication at all about the court's view on the merits. It is simply a decision to refrain from accepting the case for review. If that were all that the Illinois Supreme Court did in Rule 708 petitions, Hale would have a much stronger case.

Justice Heiple's dissenting opinion suggests that the court was playing exactly this kind of passive role, but as we said before, a dissent does not reflect the state of the law. The court itself has said that the final decision concerning the admission of an applicant to the bar rests with itself. *In re Loss, supra*, 518 N.E.2d at 983. Moreover, the fact that the court may decide a Rule 708 appeals on a paper record, as it did in Hale's case, does not mean that the court failed to decide the case on the merits. There is no rule that requires full briefing and oral argument in every case, and we note that the federal courts of appeals decide countless cases every year on paper records, under the authority conferred by FED. R. APP. P. 34. Some of those decisions are brief orders indicating that a lower court's decision, or an administrative agency's decision, is affirmed. That is essentially what the Illinois Supreme Court does in its response to Rule 708 petitions, unless it thinks that expanded proceedings are necessary.

We therefore reject Hale's argument that he had no prior opportunity to litigate his constitutional challenges to the Illinois Supreme Court's decision not to override the Committee's recommendation to deny his admission to the bar. He did, and he was unsuccessful. Implicit in this conclusion is the fact that the Committee itself was not the final actor, and thus any limitations on its powers that were not shared by the Illinois Supreme Court are irrelevant. Finally, Hale presents nothing analogous to the facial challenge to a particular court rule that the Supreme Court found was cognizable in *Feldman*. His only complaint is about the evaluation of his character and fitness to practice law in the State of Illinois. Although he asserts that the Illinois rule prohibiting discrimination should not have applied to his personal life, this is an "as applied" challenge that merely restates his principal argument. His challenge to the Illinois Supreme Court's decision not to admit him to the bar has been adjudicated, and he must take any further complaints he has about the outcome of that adjudication to the state courts of Illinois.

The judgment of the district court dismissing Hale's action is hereby AFFIRMED.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*