In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-2164

BRYAN J. BROWN,

*Plaintiff-Appellant*,

*v.*

ELIZABETH BOWMAN, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:09-cv-346-TLS—**Theresa L. Springmann**, *Judge*.

ARGUED OCTOBER 20, 2011—DECIDED FEBRUARY 2, 2012

Before CUDAHY, KANNE, and SYKES, *Circuit Judges*.

CUDAHY, *Circuit Judge*. This case involves the scope of the *Rooker-Feldman* doctrine and whether the district court properly applied that doctrine to appellant's 42 U.S.C. § 1983 claims. In April 2007, appellant Bryan Brown applied for admission to the Indiana Bar. As part of his application process, the Indiana Board of Law Examiners (BLE) requested that Brown attend hearings to investigate his application and also required Brown to

be evaluated by mental health professionals. The BLE ultimately denied Brown's admission application and, after exhausting his appeals to the Indiana Supreme Court and the United States Supreme Court, Brown brought suit in the district court. His complaint, lodged against various state actors involved in his application process, alleged that the evaluation of his application focused on his religious beliefs (ostensibly Roman Catholic) and violated his constitutional rights. The district court dismissed his complaint without prejudice for lack of subject matter jurisdiction under *Rooker-Feldman*. The district court also found that the defendants were immune from civil suit. On appeal, Brown raises two issues: (1) whether the district court erred in dismissing his federal suit under *Rooker-Feldman*; and (2) whether the district court erred in finding that defendants were entitled to immunity. For the reasons that follow, we affirm the district court's finding that *Rooker-Feldman* applies and decline to assess whether the district court was correct in ruling in the alternative that the defendants were immune from suit.

Indiana's constitution provides that the state's supreme court shall have original jurisdiction in admission to the practice of law. IND. CONST. art. VII, § 4. Pursuant to this authority, the Indiana Supreme Court has adopted Admission and Discipline Rules, which govern the process of admission to the Bar. Rule 9 establishes the Indiana Board of Law Examiners (BLE). This body must

> report and certify to the [Indiana] Supreme Court that
> the applicant, after due inquiry, has been found to

possess the necessary good moral character and fitness to perform the obligations and responsibilities of an attorney practicing law in the State of Indiana, and has satisfied all general qualifications for admission.

Rule 12 § 1. In determining whether an applicant possesses good moral character and fitness, relevant disqualifying considerations may include, but are not limited to the following:

> unlawful conduct; academic misconduct; making of false statements, including omissions; misconduct in employment; acts involving dishonesty, fraud, deceit or misrepresentation; abuse of legal process; neglect of financial responsibilities; violation of an order of a court; evidence of mental or emotional instability; evidence of drug or alcohol dependency; denial of admission to the bar in another jurisdiction on character and fitness grounds; and disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction.

Rule 12 § 2. In accordance with Rule 12, the BLE may refer an applicant to the Judges and Lawyers Assistance Program (JLAP) for evaluation. Rule 31 §8(c).

The JLAP is designed to "assist impaired members in recovery; to educate the bench and bar; and to reduce the potential harm caused by impairment to the individual, the public, the profession, and the legal system." *JLAP Guidelines* § 2. JLAP is administered by a committee, which provides assistance to judges, lawyers and law students who are impaired by, among other things, mental health problems. The Judges and

Lawyers Assistance Committee (JLAC) comprises qualified personnel approved by the Indiana Supreme Court. On request, the committee will issue a report of evaluations made by its approved health providers for the use of the BLE in reviewing a bar admission application.

Based on an application, hearings and evaluations, the BLE must make a determination as to an applicant's admission to the Bar. If the BLE finds that an applicant is not eligible for admission, the applicant may request a hearing (where the applicant has rights of subpoena and examination of witnesses). Rule 12 § 9(e) & (f). If the BLE confirms its decision to deny the applicant admission, it must issue a "final report of the proceedings, including specific findings of fact, conclusion and recommendations." Rule 12 § 9(h). The applicant may appeal to the Indiana Supreme Court. Rule 14 § 2. The only court in which the applicant can then seek further review is the Supreme Court of the United States. 28 U.S.C. § 1257.

In April 2007, Brown sought admission to the Indiana Bar. On the basis of his application, the BLE requested a hearing. After the hearing, the BLE referred him to JLAP for evaluation. *See* Rule 31 § 8(c). Defendant Tim Sudrovech, the Clinical Director of JLAP, referred Brown to psychologist Stephen Ross, also a defendant. Ross met with Brown twice over the course of several months and performed three psychological examinations on him. Based on this, Ross issued a report noting the possibility of a sub-clinical bipolar disorder of a

hypomanic type but concluding that nothing should preclude Brown's application from going forward. Order 4. Ross also opined that Brown's "interpersonal style" warranted further consideration by a psychiatrist and a psychiatric interview was arranged.

Brown then wrote two letters to defendant Ross requesting him to change his report. These letters expressed Brown's concerns regarding the political and religious content of Ross's questions, questioned the scientific validity of the tests used and disagreed with Ross's suggestion that he undergo further psychiatric evaluation for a possible bipolar disorder. Brown later sent another letter to defendants Sudrovech and Terry Harrell, Executive Director of JLAP. This letter also raised concerns about the evaluation process and requested an independent review of his case by "state officers trained in constitutional and civil rights law." Order 5. The following day, Brown requested permission to be evaluated by a psychiatrist of his own choosing. Sudrovech denied this request stating that evaluations were to be provided by a psychiatrist from the JLAP providers list.[1] *Id.* Brown eventually acquiesced to Sudrovech's request that he see a JLAP-approved psychiatrist and scheduled an appointment with Dr. Elizabeth Bowman, who is also a defendant here.

---

[1] Despite this denial, Brown went ahead and met with his choice, Dr. Bryan Flueckiger, who issued a report on May 1, 2009 stating that Brown satisfied the requirements of Rule 12 and recommended that he be permitted to sit for the Indiana bar examination.

*Id.* Bowman's evaluation of Brown involved his visiting Dr. William Alexy, who conducted a psychological examination of Brown. On the basis of several interactions with Brown, defendant Bowman subsequently issued a report, in which she concluded that Brown suffered from a personality disorder, not otherwise specified.[2] Order 6.

In response to Bowman's report, Brown sent multiple letters to the BLE again expressing his concerns about the JLAP and BLE process, and the religious cast of his evaluations by Drs. Bowman and Ross. Brown made more than sixty complaints to the JLAP and BLE about Bowman's opinion and requested a civil rights investigation. Sudrovech, after reviewing Bowman's report, prepared a report on behalf of JLAP to assist the BLE in making its final decision on Brown's bar application.

In a letter dated February 11, 2009, the BLE notified Brown that he would not be admitted to the Indiana bar because he was unable to demonstrate good moral character and fitness under Admission and Discipline Rule 12. Pursuant to Rule 12 § 7, Brown requested a

---

[2] Dr. Bowman's report specifically stated that Brown "firmly believes he is obligated as a Christian to put obedience to God's laws above human laws." Dr. Bowman further noted that Brown expressed "devaluing attitudes towards pharmacological or psycho-therapeutic mental health treatment" and that he made "sarcastic remarks devaluing authority of all types, especially mental health authority and the abortion industry."

hearing with the BLE. Prior to the hearing Brown requested a more definite statement as to why his application had been denied. The BLE also obtained certain other information relating to a disciplinary action against Brown in Kansas (where he had been admitted to the bar), the full results of Brown's psychological and psychiatric evaluations and his voluminous correspondence with JLAP and with his character and fitness evaluator.

At the hearing, Brown called no witnesses but submitted Bowman's report. He argued that Bowman's religious beliefs rendered her incapable of evaluating him objectively. After the hearing, Brown filed several motions and sought reconsideration of his application denial and an independent civil rights investigation. The BLE issued a report with its factual and legal findings and a recommendation that Brown not be admitted to the Indiana bar. Brown then appealed to the Indiana Supreme Court. On November 16, 2009, the court issued an order stating that "[a]fter review of the submissions of the parties, it is the Court's determination that the BLE's decision should stand." *In re Bar Applicant 24128*, No. 94S00-0910-BL-446, at 1 (Ind. Nov. 16 2009). Thereafter, the United States Supreme Court denied Brown's petition for certiorari.

On December 8, 2009, Brown filed suit in district court alleging twenty-six counts of federal and state constitutional, state statutory and common law violations. Brown named as defendants in his federal suit Drs. Bowman and Ross, Harrell, individually and in her official

capacity as Executive Director of the JLAP, Sudrovech, individually and in his official capacity as Clinical Director of JLAP, Randall Shepard, in his official capacity as Chief Justice of the Indiana Supreme Court and John Does and Jane Roes as co-conspirators. The bulk of Brown's § 1983 complaint alleged various violations of the First Amendment: five counts under the Free Speech Clause; three counts under the Free Exercise Clause; two counts under the Establishment Clause; and one count under the Assembly Clause. Four other counts alleged violation of Brown's Due Process and Equal Protection rights under the Fourteenth Amendment. The remaining counts alleged violation of various state common law requirements, statutes and constitutional provisions.

Defendants moved to dismiss Brown's complaint citing lack of subject matter jurisdiction, lack of justiciability and various immunity defenses. The district court granted the motions to dismiss, finding that Brown's civil rights claims were barred under *Rooker-Feldman* because they were inextricably intertwined with the Indiana Supreme Court's adjudication of Brown's bar application and finding that Brown's as-applied challenges to Admission and Discipline Rules 19 and 23 were unripe and did not present a case or controversy. Finally, the district court concluded that Shepard, the Supreme Court defendant, was absolutely immune under the Eleventh Amendment and that defendants Ross, Bowman and Sudrovech were entitled to absolute witness immunity.

Brown raises two issues on appeal. First, he claims the district court erred in finding that the *Rooker-Feldman* abstention doctrine barred the action. Second, he claims error in the finding that Sudrovech, Bowman and Ross were absolutely immune from suit.

I.

Our review of a determination of subject matter jurisdiction based on the *Rooker-Feldman* doctrine is *de novo*. *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004). *Rooker-Feldman* "prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005)). The reason, quite simply, is that no matter how erroneous or unconstitutional the state court judgment may be, only the Supreme Court of the United States has jurisdiction to review it. *Brokaw v. Weaver,* 305 F.3d 660, 664 (7th Cir. 2002).

*Rooker-Feldman* bars federal claims in two instances. The first involves a plaintiff's request of a federal district court to overturn an adverse state court judgment. The second, and more difficult instance, involves federal claims that were not raised in state court or do not on their face require review of a state court's decision. *Taylor*, 374 F.3d at 532-33. In this latter instance, *Rooker-Feldman* will act as a jurisdictional bar if those claims

are "inextricably intertwined" with a state court judgment. *Id.* at 533. Though sometimes understandably labeled a "metaphysical concept," the thrust of the "inextricably intertwined" inquiry asks whether "the district court is in essence being called upon to review the state-court decision." *Id.*; *see also Young v. Murphy*, 90 F.3d 1225, 1231 (7th Cir. 1996) ("[C]onstitutional claims that are 'inextricably intertwined' with state court judgments of necessity call upon the district court to review the state court decision and are thus beyond the district court's jurisdiction."). The determination of whether a federal claim is "inextricably intertwined" hinges on whether it alleges that the supposed injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy. *See Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 555 (7th Cir. 1999). An alleged injury is "independent" if the state court was acting in a non-judicial capacity when it affected the plaintiff—for example, if the state court was "promulgating rules regulating the bar." *Edwards v. Ill. Bd. of Admissions to Bar*, 261 F.3d 723, 729 (7th Cir. 2001).

But finding that a federal claim is inextricably intertwined with a state court judgment does not end the inquiry. Once it is determined that a claim is inextricably intertwined, we must then inquire whether "the plaintiff [did or] did not have a reasonable opportunity to raise the issue in state court proceedings." *Brokaw,* 305 F.3d at 667 (citing *Long,* 182 F.3d at 558). If the plaintiff could have raised the issue in state court, the claim is barred under *Rooker-Feldman*.

On appeal, appellant argues that his federal suit does not "run aground upon the narrow shoals of *Rooker-Feldman*" because it is not calculated to overturn the Indiana Supreme Court's final judgment. True, appellant's complaint does not explicitly request a lower federal court to overturn an inconsistent state court judgment, but that is not the only circumstance in which *Rooker-Feldman* applies. The key question is whether Brown's civil rights claims involving the process by which his application was evaluated are so inextricably intertwined with the Indiana Supreme Court's adjudication of his Bar application that in practical effect a lower federal court would be required to review a state court decision.

We addressed a similar question in *Edwards v. Illinois Board of Admissions to Bar*, 261 F.3d 723 (7th Cir. 2001), in which an Illinois bar applicant who was denied admission brought suit in federal court claiming that her application process violated the Americans with Disabilities Act (ADA). *Id*. at 725. Like appellant here, the plaintiff stressed that she was not seeking reversal of the decision to deny her admission to the bar. *Id*. at 726. Rather, she claimed that requiring the release of her medical records as part of the admission process violated the ADA. *Id*. In response, we stated:

> While she might not be asking us to review the state court order declining certification, granting the relief she requests would have that effect: she is asking for a remand so the district court may determine whether the Committee violated the ADA in

treating [plaintiff's] decision not to release the records as it did.

*Id.* at 731. Edwards' federal claim involves not a direct challenge to a bar rule, but rather a challenge to the manner in which the Committee treated her application. This, we said, "is precisely the type of claim that the *Rooker-Feldman* doctrine bars the lower federal courts from considering because it requires review of a state court decision in a particular case that arose out of judicial proceedings." *Id.* at 730.

Here, appellant's artful pleading cannot get him around *Rooker-Feldman* when the gravamen of his complaint requires the district court to review the state judicial proceeding. In *Edwards*, the plaintiff claimed that the process by which the state actors assessed her bar applications violated her constitutional rights. Here too, Brown challenges the "manner in which the [BLE] treated his application." The Supreme Court has found such claims barred under *Rooker-Feldman*:

> If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the District Court is in essence being called upon to review the state court decision. This the District Court may not do.

*Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 483 n.16 (1983). Though Brown focuses much of his appeal on the allegedly religiously biased JLAP evaluations and the conduct of JLAC members, these actions

are intimately connected with the Indiana Supreme Court's adjudication. Here, the Indiana Supreme Court, through its agent the BLE, commissioned the JLAC to assist it in processing Brown's admission application. We agree with the district court that "reviewing the JLAC's actions in this context would require [the district court] to consider the Indiana Supreme Court's process of refer-ring cases to the JLAC, reviewing how the JLAC's informa-tion is utilized by the BLE, and finally reviewing the Indiana Supreme Court's ultimate resolution in the case of an individual seeking admission to the bar." Order 15. Because Brown's claims of religious bias require a federal district court to review the judicial process fol-lowed by the Indiana Supreme Court in deciding the merits of Brown's bar admission application, Brown's claims are "inextricably intertwined" and fall squarely under *Rooker-Feldman*'s jurisdictional bar.

Further, a simple reading of Brown's complaint shows that his religious discrimination claims in district court are essentially the same arguments he made to the Indiana Supreme Court. When a bar applicant has an opportunity before a state court to raise alleged errors of law and facts involving his admission application, that applicant is barred from subsequently raising similar claims in any federal court but the Supreme Court. *Hale v. Comm. on Character & Fitness for State of Ill.*, 335 F.3d 678, 684 (7th Cir. 2003). In *Hale*, we again addressed the applicability of *Rooker-Feldman* to an ag-grieved bar applicant's federal claims. There, the applicant alleged various constitutional violations before the Illinois Supreme Court, and that court, in

affirming the adjudicating committee's admission decision, rejected those arguments. The applicant then brought a federal suit making many of the same contentions of religious bias as he had made before the state supreme court. Because the Illinois Supreme Court had the power to hear constitutional claims, and in fact the applicant had raised such claims there, we affirmed a dismissal of the action under *Rooker-Feldman*. *Hale*, 335 F.3d at 683 (citing *In re Anastaplo,* 121 N.E.2d 826, 828 (Ill. 1954) (Illinois Supreme Court resolves petitioner's constitutional challenge to the Committee's decision to reject his bar application)).

Like the applicant in *Hale*, Brown had an opportunity to raise federal constitutional claims before a state court with power to adjudicate them. Thus, Indiana Admissions and Discipline Rule 14 § 2 provides that an applicant aggrieved by the final action of the BLE may "file a petition with the Supreme Court of Indiana requesting review by [the] Court of such final determination, and setting forth specifically therein the reasons, in fact or law, assigned as error in the [BLE's] determination . . . . [T]he Court shall enter such order as in its judgment is proper, which shall thereupon become final." Rule 14 § 2. Brown did claim before the Indiana Supreme Court that he had suffered unconstitutional discrimination. As its order indicates, that court "carefully reviewed" these contentions and ultimately determined that they did not merit reversal of the BLE's admission determination. Because Brown is attempting to raise similar violations here, his claims are barred.

Though appellant insists that he does not request reversal of the Indiana Supreme Court's admission decision, the casting of a complaint in the form of a civil rights action, however artful, cannot circumvent *Rooker-Feldman*. The civil rights claims are "inextricably intertwined" with (and were directly resolved by) the Indiana Supreme Court's adjudication of his admission application. We therefore affirm the dismissal of his constitutional claims under *Rooker-Feldman*.

## II.

Brown raises a second issue of whether the district court erred in finding that defendants Bowman, Ross and Sudrovech are entitled to absolute immunity.[3] Although it is not necessary to decide this issue, because it was determined by the district court and raised on appeal, we believe it appropriate to discuss it briefly. In that regard, in determining whether a government official is entitled to immunity, this Court applies a "functional approach." *Auriemma v. Montgomery*, 860 F.2d 273, 275 (7th Cir. 1988). That is, we look to "the nature of the

---

[3] The appellant formulated the issue on appeal as: "Did the District Court err in extending absolute immunity to putative expert witnesses who were not subjected to the crucible of the judicial process?" As we read it, Brown limits his arguments on the immunity issue to defendants Sudrovech, Ross and Bowman, who each issued expert reports in connection to Brown's bar admission application. Accordingly, we too limit our review on appeal to those three defendants.

function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993) (citing *Forrester v. White,* 484 U.S. 219, 229 (1988)). Contrary to appellant's contention, witness immunity is not limited to in-court testimony. *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443-44 (7th Cir. 1996) (prisoner review board members entitled to witness immunity); *Crenshaw v. Baynerd*, 180 F.3d 866, 868 (7th Cir. 1999) (commissioners of Indiana Civil Rights Commission entitled to immunity). As court-appointed experts requested to prepare reports in connection with a judicial proceeding, defendants Sudrovech, Bowman and Ross are likely entitled to the absolute immunity traditionally provided to witnesses at common law.

Ross, Bowman and Sudrovech's actions in this case are materially similar to those of other government officials to whom we have accorded witness immunity. In *Cooney v. Rossiter*, 583 F.3d 967 (7th Cir. 2009), we explained that court-appointed experts, like child guardians, are

> arms of the court, much like special masters, and deserve protection from harassment by disappointed litigants, just as judges do. Experts asked by the court to advise on what disposition will serve the best interests of a child in a custody proceeding need absolute immunity in order to be able to fulfill their obligations "without the worry of intimidation and harassment from dissatisfied parents." This principle is applicable to a child's representative, who although bound to consult the child is not bound

by the child's wishes but rather by the child's best interests, and is thus a neutral, much like a court-appointed expert witness.

*Id.* at 970 (internal citations omitted). Much like the expert witnesses in *Cooney*, these defendants were commissioned by the Indiana Supreme Court to issue objective and neutral reports on Brown's mental health and fitness for the Indiana Bar. The BLE and Indiana Supreme Court relied on these reports in denying Brown's admission to the bar. As state actors intimately connected with the BLE judicial process, defendants, like the child guardians in *Cooney*, are almost certainly entitled to immunity in order to preserve the authority of their evaluations.

Brown's complaint does not allege that defendants engaged in conduct beyond the scope of their court-appointed duties. Rather, all of the conduct Brown alleges involve a conspiracy to deprive him of his constitutional rights and were taken pursuant to those defendants' court-appointed duties. Nor are we persuaded that the bar admission process lacks adequate procedural safeguards of which a disappointed applicant may avail himself. Brown had the opportunity to request a hearing before the BLE at which he could subpoena and examine witnesses. Rule 12 § 9(e) & (f). Applicants that are ultimately denied admission by the BLE can also file a petition to the Indiana Supreme Court alleging errors of law or fact by the BLE. Rule 14 § 2. These mechanisms of review provide ample safeguards to protect Brown's due process rights. Because defendants were "part and parcel" of an adjudicatory

process containing adequate procedural safeguards, *Wilson*, 86 F.3d at 1444, the defendants are likely entitled to the absolute immunity traditionally accorded to witnesses in connection with the judicial proceedings.

Finally, we note that defendant Sudrovech is also likely entitled to immunity under the Admissions and Discipline Rules. Rule 31 § 10 provides that "[the] Committee, Executive Director, staff, and volunteers are not subject to civil suit for official acts done in good faith in furtherance of the Committee's work." Brown concedes that Sudrovech is entitled to immunity under this Rule. Appellant's Br. at 41 ("Defendants Sudrovech and Harrell are immune from civil suit only for 'official acts done in good faith in furtherance of the Committee's work.'"). Indiana law has recognized the merit of encouraging state actors who are involved in the bar admission and JLAP process to issue objective reports without being exposed to the threat of vexatious litigation. We find no reason, nor has Brown suggested any, to disregard or disturb this immunity scheme.

However, we are not deciding this issue because, assuming that we are correct in our determination that the judge-made *Rooker-Feldman* doctrine applies in this case, there may be a jurisdictional objection. But, as the district court persuasively demonstrated, there does not seem to be much doubt as to the likely outcome on this question.

For the foregoing reasons, the judgment of the district court is AFFIRMED.