NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 15, 2012[*]
Decided February 15, 2012

*Before*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-2406

|  |  |
|---|---|
| JIMI P. McDONALD, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *Plaintiff-Appellant,* | |
| *v.* | No. 11 C 2006 |
| STEPHEN D. WHITE, et al., | William J. Hibbler, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Jimi McDonald, an inmate in Illinois, contends that state officials violated his constitutional rights by failing to return his bail bond money. The district court dismissed the case at screening, *see* 28 U.S.C. § 1915A, and we affirm the judgment.

---

[*] The defendants were not served with process in the district court and are not participating in this appeal. The Attorney General of Illinois accepted our invitation to file a response brief in support of the state defendants. After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

At this stage of the case, we take as true the allegations from McDonald's complaint and its attachments, which he adopts as accurate. *See Gonzales v. Feinerman*, 663 F.3d 311, 312 (7th Cir. 2011). McDonald asserts that the clerk of Will County, Illinois, refused to return his bail bond money after he pleaded guilty to charges of theft and driving under the influence in 2005. His plea agreement stated that, after deductions for restitution payments, McDonald would receive the "remainder" of his bail bond deposit. McDonald estimates that remainder to be about $1,300. The clerk, however, invoked Administrative Order 03-17 to apply the deposited funds to McDonald's unpaid fines and fees with Will County in unrelated cases, depleting the deposit. That Order, which Judge Stephen White signed in 2003, states that before refunding monies from any bonds in Will County, the clerk shall "determine if the defendant has any outstanding fines or fees in any other cases pending or previously dismissed in the county," and if so, the bond "will be applied to outstanding fines and fees." The Order requires that the clerk notify the defendant and allow him time to object, but McDonald asserts that he did not learn until 2010 how the clerk had disposed of these funds.

McDonald suffered the loss of another bail bond deposit in 2009, after he was charged with robbery, theft, and driving under the influence in Will County. He and his girlfriend together deposited $5,850 in bail bond money for these new offenses. Both signed bail bond agreements stating, "I understand that in the event the defendant is convicted of a crime, the bail may be used to pay costs, attorney's fees, fines or for other purposes ordered by the court." Represented by a public defender, McDonald entered a plea agreement in January 2009 stating that the court would deduct $1,000 from the bail bond money for each felony before returning any remainder. The Will County clerk again found that McDonald had unpaid fines and fees, applied the bail bond money to the outstanding balance, and sent notice to McDonald. The notice stated that "a refund that was due to you, or the surety, has been applied to outstanding fines and fees in the above referenced case(s)" and informed McDonald that he could contest the application by filing a motion to rescind the application within 14 days.

McDonald opposed the application in court, asking Judge White to return the bail bond money. At a hearing before the judge in February 2009, the clerk explained that she had followed Will County policy to apply the bail bond money to McDonald's outstanding fines and fees before returning any remainder. The next month Judge White denied McDonald's motion, reasoning that the surety who paid the deposit, not the defendant, was the proper person to challenge the use of the bail bond money. Several months later McDonald again asked the court to return the bail bond money, but once again Judge White denied the motion because it was not made by the surety.

In 2011 McDonald sued Judge White, the court clerk, Will County, and his public defender under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(2), (3). His first claim targets the use of

the Order against his two bail bond deposits: he alleges that in 2009 Judge White and the clerk conspired to violate due process and state law by applying his bail bond money to unpaid fines and fees. He makes the same claim for the events of 2005 but does not identify who was involved. McDonald also contends that Will County's Order on its face violates Illinois law and the federal constitution. Finally, he alleges that his public defender violated his constitutional rights by coercing him to accept the 2009 plea agreement while knowing that the money would not be returned.

The district court dismissed the lawsuit, stating that McDonald's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). The court concluded that a judgment in McDonald's favor would effectively overturn the fines and fees imposed. The court added that McDonald's claims also fail because the statute of limitations has run on the events of 2005, and Judge White and the clerk are entitled to absolute immunity for their actions in 2009. Addressing the merits, the court found no constitutional violation: McDonald does not dispute that he owes the outstanding balance, and in any case he received due process before the state court decided that the bail bond money should cover the unpaid debts. Finally, the court declined to exercise supplemental jurisdiction, *see* 28 U.S.C. § 1367(c), over McDonald's state-law claims.

On appeal, McDonald challenges the district court's reasons for dismissing his lawsuit. He argues that the court erroneously applied *Heck* because he does not dispute that he owes the outstanding balance, nor does he challenge the validity of his convictions. McDonald also contends that the statute of limitations should be tolled because he did not know until 2010 about the injury that occurred in 2005. He next argues that Judge White and the clerk acted in an administrative, not judicial, capacity, and so they are not entitled to absolute immunity. Finally, on the merits, he presses that the Order, on its face and as applied to him, violated his constitutional rights.

We first address a jurisdictional obstacle that bars McDonald from challenging the state judgment in 2009 applying his bail bond deposit to his unpaid fines. Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction to entertain claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Indus. Corp.*, 544 U.S. 280, 283–84 (2005); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The 2009 ruling was such a judgment because, McDonald says, it caused his 2009 loss. McDonald's contention that the decision was administrative is wrong because the court inquired into the facts of his prior debts and enforced payment based on preexisting rules. This makes the ruling judicial, *see Feldman*, 460 U.S. at 479, and therefore review is barred by *Rooker-Feldman*.

We next turn to the alleged injury in 2005. *Rooker-Feldman* does not block McDonald's challenge to this injury because the doctrine "allows plaintiffs to litigate in the federal system if they were not afforded a 'reasonable opportunity' to raise their claims in state court." *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 901–02 (7th Cir. 2010); *see Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 558 (7th Cir. 1999). McDonald alleges that the clerk withheld his bail bond money without any judicial process. But even if true, this claim is nonetheless barred by the statute of limitations. A federal court borrows the applicable state statute of limitations for § 1983 (and similar) claims, *see Wilson v. Garcia*, 471 U.S. 261, 269 (1985); *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007); *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775 n.2 (7th Cir. 1995), and in Illinois, the statute of limitations for such claims is two years from when a plaintiff knows or should know of his injury. *See* 735 ILCS 5/13-202; *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008); *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). McDonald sued in 2011—six years after he pleaded guilty in 2005. McDonald should have known that he was injured in 2005, when, he alleges, Will County was required to, but did not, return bail bond money to him. Therefore his suit is several years too late. Furthermore, the state court's ongoing failure to notify McDonald of the County's retention of the money is not a "fresh act" each day, as he contends, but instead "merely a lingering effect of an earlier, distinct, violation." *Pitts v. City of Kankakee, Ill.*, 267 F.3d 592, 595 (7th Cir. 2001).

Apart from the time bar, McDonald's claim for his injury in 2005 founders for another reason—absolute immunity. McDonald does not specify who injured him in 2005, but if we assume that he means the clerk who applied the funds, the clerk would be absolutely immune from suit. Judicial clerks are entitled to absolute immunity when they act at the direction of a judicial officer, as McDonald alleges happened in his case in both 2005 and 2009 when the clerk followed the command of Judge White's Order. *Snyder v. Nolen*, 380 F.3d 279, 286–87 (7th Cir. 2004); *Smith v. City of Hammond*, 388 F.3d 304, 306 (7th Cir. 2004) (concluding that judicial clerk who executed judge's bail decision was absolutely immune from suit).

This brings us to McDonald's claim against Will County, where he contends that the Order on its face violates procedural due process. *Rooker-Feldman* does not block purely facial challenges to court rules, *Feldman*, 460 U.S. at 487; *Brown v. Bowman*, No. 11-2164, 2012 WL 310832, at *4 (7th Cir. Feb. 2, 2012), but the district court correctly concluded on the merits that the Order comports with procedural due process. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Lobzun v. United States*, 422 F.3d 503, 507 (7th Cir. 2005) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The Order provides that defendants receive both notice and the opportunity for a hearing. It requires that the court send a written notice to the defendant stating (1) that the County intends to apply the bond remainder to outstanding

fines and fees; (2) a list of cases in which any outstanding fines and fees are owed; and (3) instructions on how to contest the application of the bond to the debts, such as through a motion with the court and participation in a hearing. Thus, any facial challenge to the Order is meritless.

Finally, McDonald appears to have abandoned on appeal his federal claim against his public defender. In any case, it is frivolous because a court-appointed public defender is not a state actor, and thus cannot be sued under 42 U.S.C. § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.").

AFFIRMED.